IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,

Plaintiff,

v.

DION HALASKA,                                              No. 07-40049-DRH

Defendant.

## MEMORANDUM AND ORDER

**HERNDON, Chief Judge:**

Pursuant to the Government's oral motion for downward departure made during the sentencing hearing of April 17, 2009, the Court issues this Order setting forth Dion Halaska's sentence and rationale for that sentence.

## LEGAL STANDARD

The sentencing landscape has changed considerably since the landmark case of **United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed. 621 (2005).** Gone are the days when the sentencing court merely applies the sentencing guideline to a case, explaining to the defendant that his hands are, for all practical purposes, tied. That, within some range, his sentence is predetermined once the variables of his offense conduct, acceptance of responsibility and criminal history are plugged into the formula. It is further clear now that the Supreme Court has given us **Rita v. United States, 551 U.S. 338, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007)** and **Gall v. United States, 552 U.S. \_\_\_, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007)** that the proper procedure, as a starting point and initial benchmark, is for

the sentencing court to correctly calculate the sentencing range as determined by the Guidelines. Each party is to be given an opportunity to argue for whatever sentence he or she deems appropriate in the case. Thereafter, the district judge is to consider all of the section 3553(a) factors, without giving a presumption of reasonableness to the Guidelines. An individualized assessment of the factors as weighed against the facts in the case must be made. According to the nation's highest court: "If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one." **Gall, 552 U.S. at 597.**

**CRIMES OF CONVICTION**

    **STATUTORY MAXIMUM**

    **GUIDELINE RANGE**

Halaska pled guilty to Count 1 of conspiracy to manufacture, possess with intent to distribute , and distribute methamphetamine which is a Class A Felony that has a statutory range of ten (10) years to life, a maximum fine of $4,000,000 and a special assessment of $100. Based on Halaska's total offense level of 35 and a criminal history category of III, the guideline range on Count 1 is 210 to 262 months in prison and a fine range of $20,000 to $4,000,000, and a special assessment of $100. These findings were without dispute.

## 18 U.S.C. § 3553(a) FACTORS

In sentencing Halaska, the Court considers the following relevant factors outlined in **18 U.S.C. § 3553(a)**: (1) the nature and circumstances of the offenses; (2) the history and characteristics of the defendant; (3) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need to afford adequate deterrence to criminal conduct; (5) the need to protect the public from further crimes of the defendant; (6) the need to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner; (7) the need to consider restitution; (8) the need to consider the kinds of sentences available, as well as the sentencing range established for the applicable category of offenses committed by the applicable category of defendant set forth in the sentencing guidelines, in effect, including amendments yet to be implemented as called for by Congress; (9) consider any policy statements the Sentencing Commission has in place or about to be in place; and (10) the need to avoid unwarranted sentencing disparities among defendants everywhere with similar records who have been found guilty of similar conduct.

## SENTENCE IMPOSED

The Court determines that the Defendant should serve **159 months** in prison for his crime. This sentence represents a variance from the guideline sentence relative to Count 1and constitutes a non-guideline sentence. The Court

bases its sentence in part on the Government's motion for a variance from the guidelines in this case. Based on Defendant's exemplary post offense conduct and apparent rehabilitation even prior to the indictment in this case, the Court agrees with the Government's motion. Although Defendant argued for the statutory minimum sentence, Defendant's post offense conduct demonstrating rehabilitation does not justify as great as variance as Defendant would argue due to the seriousness of the offense and the need for just punishment. There is no condoning a methamphetamine operation whether the operation is used to pass methamphetamine between participants or place it in a stream of commerce. Methamphetamine is a highly addictive drug as Defendant himself conceded. Defendant's sentence is also proportional with Defendant's brother, who is the co-defendant that is closest to Defendant in terms of a similarly situated defendant within the enterprise at bar. Defendant's brother received 135 month sentence based on a first offender provision for which Defendant is not eligible. Defendant's sentence is proportional to his brother's sentence and reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense. Because methamphetamine has such detrimental effect on the community, the punishment factor is an especially important factor is this case. The Court believes that while a factor to be considered and the sentence imposed certainly addresses it, the protection of the public is less a concern with this Defendant due to his successful rehabilitative efforts pre-indictment. Likewise, the deterrent factor, one of lesser significance in this case as to the Defendant is addressed by the sentence

in signaling would be offenders that federal sentences are serious nonetheless as it is well above the mandatory minimum, as those "wanna-be's" look at a defendant who has a criminal background and chooses to involve himself in a large scale meth operation.

**<u>RESTITUTION</u>**

Restitution in this case is in the amount of $6,913.37, a joint and several liability, with the Defendant's co-Defendants Anton J. Halaska, IV, Clarence Charles E. McCay, Jr., Marshal D. Rosenberger, and any other co-defendants ultimately convicted in this case. Payments are due immediately, through the Clerk of the Court. Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be paid in equal monthly installments of $130 or ten percent of his net monthly income, whichever is greater, over a period of 54 months, to commence 30 days after release from imprisonment to a term of supervision. The record reflect that restitution is to the Drug Enforcement Administration for the cleanup associated with the manufacture of amphetamine or methamphetamine by the Defendant.

**<u>SUPERVISED RELEASE</u>**

Upon release from imprisonment, the Defendant shall be placed on supervised release for a term of five years. Within 72 hours of release from custody of the Bureau of Prisons, the Defendant shall report in person to the United States Probation Office in the district to which the Defendant is released.

While on supervised release, the Defendant shall not commit another

federal, state, or local crime and shall comply with the standard conditions that have been adopted by this Court and which shall be written completely in the judgment of the Court.

The Defendant shall refrain from any unlawful use of a controlled substance. The Defendant shall submit to one drug test within 15 days after being released on supervision and at least two periodic drug tests thereafter, not to exceed 52 tests in one year.

The Defendant shall not possess a firearm or destructive device.

The Defendant shall cooperate in the collection of DNA as directed by the probation officer.

In addition, the Defendant shall comply with the following special conditions:

(a) The defendant shall provide the probation officer and the Financial Litigation Unit of the United States Attorney's Office with access to any requested financial information. The defendant is advised that the probation office may share financial information with the Financial Litigation Unit.

(b) Due to the defendant's substance abuse history, he shall participate as directed and approved by the probation officer in treatment for narcotic addiction, drug dependence, or alcohol dependence, which includes urinalysis or other drug detection measures and which may require residence and/or participation in a residential treatment facility. The number of drug tests shall not exceed 52 tests in a one year period. Any participation will require complete abstinence from all alcoholic beverages. The defendant shall pay for the costs associated with substance abuse counseling and/or testing based on a copay sliding fee scale as directed and approved by the United States Probation Office. The co-pay shall never exceed the total costs of counseling.

     (c)     Because the defendant manufactured methamphetamine at his residence, he shall submit his person, residence, real property, place of business, computer, or vehicle to a search, conducted by the United States Probation Officers at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of supervision. Failure to submit to a search may be grounds for revocation. The defendant shall inform any other residents that the premises may be subject to a search pursuant to this condition.

It is further ordered that the Defendant shall pay to the United States a special assessment of **$100**. The special assessment is payable through the Clerk of the U.S. District Court. The formal judgment of the Court to follow.

**IT IS SO ORDERED.**

Signed this 22nd day of April, 2009.

/s/ David R Herndon
**Chief Judge**
**United States District Court**